## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:21-cv-00103-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| SHAWN C. CUTTING, | |
| Defendant, | |
| CRYPTO TRADERS MANAGEMENT, LLC, JANINE M. CUTTING, GOLDEN CROSS INVESTMENTS, LLC, LAKE VIEW TRUST, AND TYSON TRUST, | |
| Relief Defendants. | |

## INTRODUCTION

Before the Court is Plaintiff United States Securities and Exchange Commission's ("SEC") motion for remedies against Defendant Shawn C. Cutting and Relief Defendants Crypto Traders Management, LLC ("CTM"), Janine Cutting, Golden Cross Investments, LLC ("Golden Cross"), Lake View Trust, and Tyson Trust. For the reasons discussed below, the Court will grant the SEC's motion for remedies.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

In March 2021, the SEC filed an enforcement action alleging that Cutting lured investors into investing millions of dollars into his cryptocurrency investment company, CTM, through false representations and then misappropriated those funds for his personal use.[1] On September 28, 2022, the SEC filed for summary judgment as to liability regarding its various securities fraud claims. The Court granted the SEC's motion for summary judgment, finding that Cutting violated Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. *See MSJ Order at 36*, Dkt. 101. The Court also found that Cutting violated Sections 5(a) and (c) of the Securities Act by offering and selling unregistered securities. *See id.* at 36-39.

On September 28, 2023, exactly a year later, the SEC filed this motion for remedies. *See Plf.'s Mtn.*, Dkt. 107. Through its motion, the SEC seeks: (1) disgorgement of any ill-gotten gains, plus prejudgment interest; (2) an injunction restraining Cutting from violating the securities laws and rules that he violated; and

---

[1] The Court will not provide a lengthy factual or procedural background of the matter. A detailed recitation of the background can be found in the Court's summary judgment order, which it will rely on here. *See MSJ Order*, Dkt. 101.

(3) imposition of a civil penalty against Cutting in an amount equal to his pecuniary gain from his fraud. *See Plf.'s Mtn.*, Dkt. 107. In support of its motion, the SEC filed a memorandum, a declaration from one of the SEC's counsel, and a portion of Cutting's answers to interrogatories. On the other hand, neither Cutting nor any other defendant filed a response or opposition to the SEC's motion.

## ANALYSIS

### A.    Disgorgement

The first form of relief the SEC seeks is the disgorgement of all ill-gotten proceeds resulting from violations of securities law. Specifically, the SEC requests that the Court order Cutting to disgorge $5,257,563 plus prejudgment interest. In addition to seeking disgorgement from Cutting, the SEC also requests that CTM should be joint and severally liable with Cutting; Janine Cutting should disgorge $57,916 plus prejudgment interest; Golden Cross should disgorge $317,300 plus prejudgment interest; Lake View Trust should disgorge $446,887 plus prejudgment interest; and Tyson Trust should disgorge $58,000 plus prejudgment interest. The Court will address Cutting, CTM, and then the remaining Relief Defendants.

District courts have "broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010). The purpose

of disgorgement is to prevent unjust enrichment. *Id.* Thus, to determine the disgorgement amount, the SEC need only show "a reasonable approximation of profits causally connected to the violation." *Id.* (quoting *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998)). Once the SEC offers a reasonable approximation of a defendant's actual profits, the burden then shifts to that defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *Id.* (citations omitted).

## 1.  Shawn Cutting

As mentioned, the SEC seeks disgorgement of Cutting's net profits amounting to $5,257,563.[2] *See Plf.'s Br.* at 6, Dkt. 107-1. In calculating Cutting's net profits, the SEC reduced Cutting's gross pecuniary gain by any appropriate deduction it could find that was supported by financial records. Specifically, The SEC claims Cutting's gross pecuniary gain from his violations of federal securities laws was $6,899,969, which is equal to the funds he raised for CTM, which would purportedly be invested in crypto assets. *See id*. at 6. The SEC then determined that Cutting should be entitled to $1,642,406 in deductions. *See id.* at 7. In determining what deductions would be appropriate, the SEC identified $769,302 in payments to

---

[2] The SEC has stated that it intends to distribute any amount ordered to the victims. *See id.*

investors, and $880,104 was diverted to the Relief Defendants. *See id.*

Here, the Court finds the SEC's calculation is a "reasonable approximation" of Cutting's net profits from his violations of securities laws. First, the Court has already found that Cutting, through CTM, received at least $6.9 million from over 450 investors. *See MSJ Order* at 8, Dkt. 101. Second, the Court finds that the SEC's deductions for payments to investors and diverted funds are appropriate.[3] *See, e.g., S.E.C. v. Loomis*, 17 F. Supp. 3d 1026, 1032 (E.D. Cal. 2014) (deducting Ponzi-like payments to investors). Thus, the burden shifted to Cutting to show that the disgorgement figure was not a reasonable approximation; however, Cutting offered no opposition to the SEC's motion or calculation. Accordingly, the Court will order Cutting to disgorge $5,257,563 for the benefit of the investors.

Based on the disgorgement amount of $5,257,563, the SEC also requests that the Court order Cutting to pay prejudgment interest using the interest rate used by the Internal Revenue Service for the underpayment of federal income tax under 26 U.S.C. § 6621(a)(2). Generally, "[d]isgorgement orders also include prejudgment interest." *Sec. & Exch. Comm'n v. CMKM Diamonds, Inc.*, 635 F.

---

[3] As discussed below, the Court will order that the Relief Defendants disgorge the diverted funds. Therefore, the Court finds such deductions appropriate to avoid imposing double relief.

Supp. 2d 1185, 1190 (D. Nev. 2009); *see also Sec. & Exch. Comm'n v. Rothenberg*, 428 F. Supp. 3d 246, 249 (N.D. Cal. 2019) ("Disgorgement, therefore, typically includes prejudgment interest to ensure that wrongdoers do not profit from their illegal conduct.").

In *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1099 (9th Cir. 2010), the Ninth Circuit found that it was not an abuse of discretion to calculate prejudgment interest using the tax-underpayment rate because when the defendant "unlawfully received money from investors ... [t]his was the rough equivalent of receiving an 'interest free loan' from investors." *Id.* at 1099; *see also Rothenberg*, 428 F. Supp. 3d at 249 (accepting § 6621(a)(2) as the prejudgment interest rate); *S.E.C. v. Olins*, 762 F. Supp. 2d 1193, 1199 (N.D. Cal. 2011), *as amended* (Feb. 25, 2011) (same). Further, Cutting has not objected to using the tax-underpayment rate to calculate prejudgment interest. As such, the Court will accept the SEC's calculation and order Cutting to pay prejudgment interest in the sum of $127,454.58.

### 2. CTM

Next, the SEC seeks to hold CTM liable for disgorgement on a joint and several basis with Cutting. The Court agrees that disgorgement is appropriate.

In the Ninth Circuit, "where two or more individuals or entities collaborate

or have a close relationship in engaging in the violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained proceeds." *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998); see also *SEC v. Janus Spectrum LLC*, 811 Fed. Appx. 432, 433-34 (9th Cir. 2020) ("[T]he imposition of joint-and-several liability for a disgorgement award is permissible so long as it is 'consistent with equitable principles.'" (quoting *Liu v. SEC*, 140 S. Ct. 1936 (2020), slip op. at 18)

Here, the Court finds that holding CTM liable on a joint and several basis is equitable under the circumstances. *See SEC v. Bronson*, 2022 WL 1287937, at *15 (S.D.N.Y. Apr. 29, 2022) (imposing joint-and-several liability because "[t]here is therefore no question that Bronson was integral to the scheme, which he ran through the companies that he controlled.") (citing *SEC v. Westport Cap. Markets, LLC*, 547 F. Supp. 3d 157, 171 (D. Conn. 2021) (imposing disgorgement award jointly and severally where "[the individual defendant] owns [the entity defendant], and he wears just about every hat of importance in the company" and finding that "[i]t is beyond dispute that [the entity defendant] and [the individual defendant] each received substantial benefits from their concerted, wrongful activities"); *SEC v. Penn*, 2021 WL 1226978, at *13 (S.D.N.Y. Mar. 31, 2021) ("[The individual defendant] and his entities carried out the fraud together, making joint and several

liability for disgorgement appropriate.")). The Court has already found that Cutting was the "final decisionmaker" and the sole owner and founder of CTM. *See MSJ Order* at 32, 36, Dkt. 101. And, Cutting used CTM to receive money and digital assets from investors, purportedly for the purpose of trading in the crypto market. Plus, he used the funds from CTM's bank accounts to pay personal expenses. *Id.* at 11, 29-30, 32-33, 37. Additionally, the Court sees no plausible way to apportion disgorgement between the parties, as Cutting and CTM are essentially one and the same. Accordingly, the Court will grant the SEC's request.

### 3. Janine Cutting, Golden Cross, Lake View Trust, and Tyson Trust

Finally, the SEC seeks the disgorgement of various amounts from the remaining named relief defendants. *See S.E.C. v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007) (explaining that a nominal defendant "encompass persons who are in possession of funds to which they have no rightful claim, such as money that has been fraudulently transferred by the defendant in the underlying securities enforcement action.").

As part of its broad equitable power, the Court can order disgorgement from relief or "nominal" defendant. *See SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998). The Ninth Circuit has explained that to obtain an order of disgorgement from a relief defendant, the SEC must show that the defendant "received ill-gotten

funds *and* that he does not have a legitimate claim to those funds." *Id.* at 677 (emphasis original); *Sec. & Exch. Comm'n v. Alternate Energy Holdings, Inc.*, No. 1:10-CV-621-EJL-REB, 2015 WL 13620998, at *2 (D. Idaho Dec. 17, 2015) (ordering relief defendant to disgorge ill-gotten gains because it "asserted no right to retain the funds.").

The Court again finds the SEC's request for disgorgement from the various relief defendants appropriate. For each of the Relief Defendants, the SEC has identified certain amounts of funds that they received from Cutting's fraudulent scheme. *See Plf.'s Br.* at 19-11, Dkt. 107-1; *see also MSJ Order* at 10-12, Dkt. 101. More importantly, the Relief Defendants' responses to discovery show that the Relief Defendants were not involved with CTM's business and, therefore, have no legitimate claims to the funds received. *See id.* (citing *Relief Defendants Response to Plaintiff's First Request for Expedited Discovery*, Answer Interrogatory No. 5, Dkt. 107-3). None of the Relief Defendants have objected to the SEC's request. Thus, the Court will adopt the SEC's calculations and order the Relief Defendants to disgorge the funds they received from Cutting and CTM's fraudulent investment scheme. *See id.* at 11.

## B.   Permanent Injunction

Both the Securities Act and the Exchange Act permit the Court to enjoin a

defendant from future violation of federal securities laws. 15 U.S.C. §§ 77t(b) and

78(u)d; *see also SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). To obtain an

injunction, the SEC must establish that there is a reasonable likelihood of future

violations. *Fehn*, 97 F.3d at 1295-96; *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th

Cir. 1980). The Ninth Circuit has instructed that the following factors should be

considered in determining whether there is a likelihood of future violations:

> (1) the degree of scienter involved; (2) the isolated or recurrent nature
> of the infraction; (3) the defendant's recognition of the wrongful nature
> of his conduct; (4) the likelihood, because of defendant's professional
> occupation, that future violations might occur; (5) and the sincerity of
> his assurances against future violations.

*Fehn*, 97 F.3d at 1295 (citing *S.E.C. v. Murphy*, 626 F.2d at 655) (these factors are

commonly referred to as the "*Murphy* factors").

Here, the *Murphy* factors weigh in favor of granting an injunction. First, as

previously explained, there is compelling evidence in this case the Cutting acted

with scienter. *See MSJ Order* at 32, Dkt. 101 (explaining that Cutting knew that he

was using investor funds to pay his personal expenses and to make Ponzi-like

payments, that he had no experience as a financial advisor, and that he did not hold

a securities license in his own name). Second, Cutting's violations occurred over

multiple years and involved hundreds of investors. *See id.* at 8. Third, there is no

indication that Cutting has acknowledged the harm or wrongful nature of his

actions, let alone offered some assurance that he will not violate securities laws in the future. Finally, although Cutting's professional occupation will not necessarily lead to future violations, that did not deter him from committing these violations. Thus, the Court will grant the SEC's request and enjoin Cutting from "future violations of Sections 17(a), 5(a), and 5(c) of the Securities Act, and Section 10(b) and Rule 10b-5 of the Exchange Act." *See Plf.'s Br.* at 13, Dkt. 107-1.

### C.     Civil Penalties

The last form of relief the SEC seeks is the imposition of a "third-tier" civil penalty of $6,899,969 against Cutting, which is the amount equal to its calculation of his gross pecuniary gain. *See Plf's Br. at 14*, Dkt. 107-1.

As the Ninth Circuit has explained, civil penalties "are designed to deter the wrongdoer from similar violations in the future[.]" *U.S. Sec. & Exch. Comm'n v. Murphy*, 50 F.4th 832, 847 (9th Cir. 2022) (citations omitted). District courts have the discretion to impose civil penalties for securities violations so long as the amount is within the statutory maximum. *See* 15 U.S.C. §§ 77t(d) and 78u(d)(3); *see also Murphy*, 50 F.4th at 847.

The securities laws provide for civil monetary penalties in three tiers. *See Loomis*, 17 F. Supp. 3d at 1032. A court is authorized to impose a "third-tier" penalty if the violation "involved fraud, deceit, manipulation, or deliberate or

reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons," which may be the "gross amount of pecuniary gain to such defendant as a result of the violation." *See* 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

Courts are to determine the amount of civil penalties "in light of the facts and circumstances" of the case. 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i*); see also U.S. Sec. & Exch. Comm'n v. Husain*, 70 F.4th 1173, 1184 (9th Cir. 2023). In doing so, as with an injunction, the Court should consider the *Murphy* factors. *See Husain*, 70 F.4th at 1184.

Here, the Court finds a third-tier civil penalty is warranted. As the Court discussed above, the *Murphy* factors similarly weigh in favor of imposing a civil penalty against Cutting for his years-long fraudulent investment scheme that resulted in significant harm to a large number of investors. Cutting's violations were committed with scienter, occurred over multiple years, and involved hundreds of investors, and there is no indication that Cutting has acknowledged the wrongful nature of his actions, nor has he made any assurances that he will not violate securities laws in the future. Accordingly, the Court will impose a civil penalty in the amount of Cutting's gross amount of pecuniary gain, which, as the

SEC calculated, is $6,899,969.[4]

## ORDER

**IT IS ORDERED that:**

1.      Plaintiff's Motion for Remedies (Dkt. 107) is **GRANTED**.

2.      Defendant Cutting shall disgorge $5,257,563 of ill-gotten gains plus $127,454.58 in prejudgment interest.

3.      Defendant Crypto Traders Management shall be held liable for disgorgement on a joint and several basis with Defendant Cutting.

4.      Relief Defendant Janine Cutting shall disgorge $57,916 of ill-gotten gains plus $1,404 in prejudgment interest.

5. Relief Defendant Golden Cross shall disgorge $317,300 of ill-gotten gains plus $7,962.03 in prejudgment interest.

6.      Relief Defendant Lake View Trust shall disgorge $446,887 of ill-

---

[4] The Court, however, acknowledges that Cutting now faces a significant amount of disgorgement and the possibility of substantial judgements entered in various civil lawsuits filed against him. *Loomis*, 17 F. Supp. 3d at 1032 (a "court may also consider other sanctions the defendant faces, whether criminal or civil.") (citations and quotations omitted); *see also United States Sec. & Exch. Comm'n v. Harkins*, No. 19-CV-02418-PAB-MDB, 2022 WL 3597453, at *17 (D. Colo. Aug. 23, 2022) (in imposing civil penalties, a court may consider "the extent to which other aspects of the relief and/or judgment issued in this matter will have the desired punitive effect.") (citations omitted). Accordingly, if Cutting is able to establish an inability to pay the civil penalty because of the ordered disgorgement and his satisfaction of civil judgments, the Court may reconsider the amount imposed.

gotten gains plus $10,833.50 in prejudgment interest.

7.  Relief Defendant Tyson Trust shall disgorge $58,000 of ill-gotten gains plus $1,406.04 in prejudgment interest.

8.  Defendant Cutting is permanently enjoined from violations of Sections 17(a), 5(a), and 5(c) of the Securities Act, and Section 10(b) and Rule 10b-5 of the Exchange Act.

9.  Defendant Cutting shall pay a civil penalty in the amount of Cutting's gross amount of pecuniary gain, totaling $6,899,969.

DATED: March 4, 2024

B. Lynn Winmill
U.S. District Court Judge